72 So.2d 414

AMERICAN LIFE INS. CO. v. MORRIS.

6 Div. 746.

Court of Appeals of Alabama.

Dec. 8, 1953.

Rehearing Denied Jan. 19, 1954.

Rogers, Howard & Redden, Birmingham, for appellee.

F. Raymond Ingram, Birmingham, for appellant.

CARR, Presiding Judge.

This cause was submitted to the jury on count three of the complaint. The count is based on an accident policy insuring against the "result of bodily injury effected solely through violent, external and accidental means during the time said policy was in force."

Pertinent to this review the policy contains this clause: "This Policy does not cover death caused * * * (2) from participation in an assault or felony * * * ."

The cause was submitted to the jury and a verdict in favor of the plaintiff was returned.

Appellant presents two questions for our review: Failure of the court to give the general affirmative charge in defendant's behalf, and the action of the court in overruling the motion for a new trial.

The insistence is made that the death of the insured was not accidental within the terms of the policy. This urgency is anchored more forcibly because of the limitation or exclusion clause noted above.

The facts and circumstances relating to the death of the insured are disclosed primarily by the testimony of one witness, Eddie Gilmore.

The insured, Barbara Pope, was a Negro girl, sixteen years of age.

It appears that Gilmore had been going with Barbara for some time and their relationship had become very intimate. On the night of instant concern Gilmore went to Barbara's room between the hours of three and four A.M. The latter was displeased because the former had just previously visited the room of another girl in the same house.

Barbara got up out of bed and an argument ensued. At this point we quote from the record:

"Q. Tell the jury what happened? A. We tussled and she slapped me and when she slapped me is when I stuck her with the knife. We started tussling, and I stuck her with the knife. I told the police I didn't intend to.

"Q. Now, she had—tell the jury what she had in her hand. A. She had a knife in her hand but didn't have it on me.

"Q. What is that? A. She had a knife in her hand, but she didn't have it drawed on me.

"Q. When she slapped you, then you stuck the knife in her? A. Yes, sir."

On cross-examination the witness stated:

"Q. Where was it you stuck her? A. In the leg.

"Q. Down in the thigh of the leg? A. Yes, sir.

"Q. She wasn't cut up about the heart or the neck or arms? A. No, sir.

"Q. The cut was down here on her leg? A. Yes, sir.

"Q. You mean then, you were not cutting at her at the time the knife stuck her? A. I was cutting at her, but I wasn't intending to cut her that bad. I thought she would move back but she didn't.

"Q. You thought what? A. I thought she would move back, but she didn't.

"Q. You thought she would move back?

"The court: But she didn't? A. Yes, sir."

The witness testified also that they had "petted and tussled lots of times." There is no proof that the deceased knew that Gilmore had a knife or any other lethal weapon.

The county coroner testified that the insured was dead when he reached the scene and that she bled to death from the effects of a knife stab wound in the right leg.

 The courts recognize the right of insurance companies to limit the coverage of a policy by imposing conditions in

the nature of exceptions or limitations. These conditions must not run counter to statutory provisions; must not be inconsistent with public policy; and must be "explicit in terms and plain of meaning." It is the duty of the courts to enforce these agreements. Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7; Rodgers v. Commercial Casualty Ins. Co., 237 Ala. 301, 186 So. 684; Day v. Home Insurance Co., 177 Ala. 600, 58 So. 549, 40 L.R.A., N.S., 652.

Confessedly our task is made more difficult by reason of the stipulation of the excluding clause set out herein above.

The decided weight of authority is stated in 29 Am.Jur., Insurance, Sec. 981, p. 738: "Moreover, it has been held that the aggression or assault on the part of the insured which will relieve the insurer from liability under its policy must be such as would justify, the person assaulted, acting as a reasonably prudent person, in injuring or taking the life of the insured."

In the case of Eminent Household of Columbian Woodmen v. Payne, 18 Ala.App. 23, 88 So. 454, this court held that a limitation in a contract of insurance which stipulated that there should be no liability if the insured died as a result of a combat should be taken to mean a combat in which the insured was at fault.

Clearly this authority contemplates a consideration of the facts and circumstances incident to an assault or combat although as a matter of fact the insured was participating therein when death ensued.

The case of Gilman v. New York Life Ins. Co., 190 Ark. 379, 79 S.W.2d 78, 97 A.L.R. 755, has been cited with approval in several authorities. The policy contained this limiting clause: "That such double indemnity shall not be payable if the insured's death resulted from * * * committing an assault or felony."

The pertinent facts are: In attempting to collect a debt the insured, Gilman, took hold of the clothing of the debtor, Walker, demanding in a profane way that the debt be paid, whereupon Walker shot Gilman.

In response to the review the court held:

"The word assault as here used refers to such an assault as would justify the person assaulted in taking his life. In other words, before appellee would be exempted from liability under its policy, Gilman must have been guilty of such an assault as justified Walker, acting as a reasonably prudent person, in firing the fatal shot. Whether Gilman made such an assault upon Walker was a question for the jury under proper instructions from the court."

In the case of Accident Insurance Co. of North America v. Bennett, 90 Tenn. 256, 16 S.W. 723, the policy contained this clause: "If death occurs from assault provoked by quarreling, no recovery can be had".

The insured was killed by his mistress during a quarrel. The court held in effect that the exception stipulation must be given a reasonable construction, and that the quarrel must not only be provoked by the insured, but it must have been of so serious a nature that the insured might reasonably have expected that anger would have been aroused thereby and injury inflicted. The court approved this instruction which was given to the jury by the trial judge:

"If you believe deceased provoked such a serious quarrel with her as that he might reasonably have expected bodily injury, then plaintiff cannot recover; but you are not to refuse to find in favor of plaintiff merely because the woman may have provoked a quarrel with the insured, and then killed him, or he provoked a frivolous or seemingly safe dispute with her,—a quarrel of a nature in which he could not reasonably have expected anger to be provoked and injury therefrom,—and was killed by her, having no reason to anticipate violence."

In the case of Riggins v. Equitable Life Assurance Soc. of the U. S., 64 Ga.App. 834, 14 S.E.2d 182, 183, the policy upon which suit was based had this provision: "The insurance under this policy shall not cover accidental injury, death * * * caused directly or indirectly * * * by participating in or in consequence of hav-

ing participated in the commission of an assault or felony."

The insured was killed by his wife. It appears that the relations between the couple were often inharmonious, in fact to the extent of personal encounters. The wife testified: "Andy (the insured) and I had fought many times before, and my brothers got mixed up in it a couple of times too. He has beaten me many times and cut my arm and knocked me through a window once and blackened my eyes several times."

A short time prior to the killing the husband had assaulted his wife at a carnival. There he struck her several severe blows and threatened to kill her. The wife preceded her husband to their home. When the latter arrived he had to break the door before he could enter. He reached in his pocket for his knife and threatened to cut his wife. The immediate trouble was quelled by the appearance of an officer whom the wife had called. The husband agreed to stay away the rest of the night. Instead, in about ten or fifteen minutes, he returned and again demanded entrance, which was refused. As he was in the act of breaking in through the door his wife fired the fatal shot.

We have set out the circumstances somewhat in detail. We think it is accurate to observe that the insured in this instance was much more responsible for his death than the insured was in the case at bar. Even so, the Court of Appeals of Georgia predicated error and ordered a reversal of the judgment at nisi prius because of the action of the lower court in directing a verdict for the defendant.

In the opinion the court made an illustration which certainly fits the facts in the case at bar. It is:

"To illustrate: If A, without provocation, slapped B, or merely jerked him around, having nothing but his hand with which to injure B, and B then pulled from his pocket a pistol and killed A, A not knowing that B had a pistol or any other lethal weapon, and A having no cause to reasonably anticipate that he would be killed, or that they would otherwise engage in anything but a fist fight, a recovery by the beneficiary could be had under the double indemnity (or accident) feature of this policy."

We do not think it will be helpful to extend this opinion to greater length by the citation and discussion of authorities.

In the instant case, when all the facts and circumstances are considered, we are not authorized to hold that as a matter of law a recovery under the policy should be disallowed.

We are bound, of course, by the familiar rules relating to the giving and refusal of the general affirmative charge. Many of these rules are recited in McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

It is our view also that we would be out of harmony with the authorities to declare that the verdict was contrary to the great weight of the evidence. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The judgment below is ordered affirmed.

Affirmed.